**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LATANYA WILLIAMS** *Plaintiff,* v. **ANDREW SAUL,** **Acting Commissioner of Social Security,** *Defendant.* | **Civil Action No. 17-00234** **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Latanya Williams's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of Administrative Law Judge Richard West's (the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits. For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

   **A. Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but his factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting

1

Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age."  Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

**B.  The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1).  To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test.  20 C.F.R. § 416.920.

First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" to perform his past relevant work. 20 C.F.R. §416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

II.  **BACKGROUND**

### A. Procedural History

Plaintiff filed an application for SSI on August 15, 2012, alleging that she became disabled on July 31, 2012. Administrative Transcript, ("Tr.") ECF No. 16, 11. Her claims were initially denied on December 13, 2012. Tr. 52. Plaintiff requested that the Agency reconsider her claims, and on September 30, 2013, her claims were again denied. Tr. 69-71.

On October 30, 2013, Plaintiff requested that an Administrative Law Judge review her claims. Tr. 72. Plaintiff appeared at a hearing before ALJ Richard West on March 18, 2015 in Newark, New Jersey. Tr. 26-42. Plaintiff was represented by counsel at the hearing. Tr. 26. On June 15, 2015, the ALJ issued his decision, concluding that Plaintiff was not disabled within the meaning of the Act. Tr. 8-21.

On July 31, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision. Tr. 6-7. The Appeals Council denied Plaintiff's request for review on October 28, 2016. Tr. 1-3. This Action followed. Plaintiff filed her Complaint in this Court on January 11, 2017. ECF No. 1.

### B. General Background

Plaintiff was born in 1983 and she applied for SSI disability benefits in 2012, when she was 28 years old. Tr. 20. Plaintiff alleged disability due to several physical and mental impairments, including: asthma; bronchitis; high blood pressure; back, neck, knee, and ankle injuries; obesity; migraines; and anxiety. Tr. 13, 44. Plaintiff has a high-school education. Tr. 20. She most recently worked as a warehouse picker/packer and temporary office worker in 2012. Tr. 31, 171.

In June 2009, Plaintiff was a passenger in a car accident which led to pain in her neck, right shoulder, and lower back. Tr. 196, 331. Plaintiff was treated by Dr. Stanley L. Malkin, M.D., from June 2009 to March 2010. Tr. 196-201, 331-53. Upon completion of treatment on March 3, 2010, Dr. Malkin noted that Plaintiff continued to experience residual neck and back pain, and that

the injured areas would not heal to normal function. Tr. 196, 199. He opined that the injuries would be "permanent in character," and that while Plaintiff was "not totally disabled," her activities of daily living would be "significantly limited." Tr. 199-200.

In a Function Report dated October 8, 2012, Plaintiff reported that she lives alone in an apartment. Tr. 151. She spends her days preparing meals, cleaning and performing other chores, and speaking to her friends and family. Tr. 151. She stated that she is trying to improve her health and get in better shape. Tr. 151-52. Plaintiff reported some problems with personal care, including dressing and bathing (due to pain from bending or standing for a long period), housework, and getting around (reporting that she does not leave her apartment often). Tr. 152-54. She stated that, while she can go out alone, she prefers to have a companion in case she falls. Tr. 155. She also noted that she cannot walk for longer than about 10 minutes without getting tired or feeling pain in her back, neck, and ankles. Tr. 156, 183-84. Plaintiff reported that she can pay attention and follow instructions very well, get along with authority figures, and handle changes in routine. Tr. 157, 184-85.

### C. Medical History

The Commissioner has summarized the medical evidence in his brief. See Def. Mem., ECF No. 23, at 4-10. The Court will address the medical evidence only where necessary to the adjudication of Plaintiff's claim in Section III, infra.

### D. ALJ Decision

The ALJ determined that Plaintiff was not disabled under the five step framework. At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, and at step two, the ALJ determined that Plaintiff's degenerative disc disease, tears in her knees, obesity, migraines, affective disorder, and anxiety qualified as severe

impairments. Tr. 13. At step three, the ALJ found that none of the impairments individually or collectively met or medically equaled the severity of a listed impairment. Tr. 13-15.

Before moving on to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, "except that she can occasionally climb, crawl, crouch and kneel." Tr. 16. In reaching this determination, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not as severe as she suggested. Tr. 16. The ALJ highlighted that Plaintiff stated she can perform most activities of daily life in her Function Report and credited medical reports which indicated that Plaintiff was not completely disabled. Tr. 16-19.

At step four, the ALJ found that Plaintiff had no past relevant work, but that her RFC enabled her to perform sedentary work. Tr. 20. The ALJ also noted that Plaintiff is a younger individual (aged 18-44), that Plaintiff has at least a high-school education and can communicate in English, and that transferability of job skills was not an issue because Plaintiff did not have past relevant work. Tr. 20. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 20. The ALJ found that Plaintiff's exertional limitations did not significantly affect her ability to perform unskilled sedentary work under Medical-Vocational Rule 201.27. Tr. 20. The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 20-21.

### III. ANALYSIS

Plaintiff argues that the ALJ erred for two reasons: first, because he improperly evaluated the evidence of Plaintiff's disability, and second, because he improperly determined Plaintiff's RFC, including by failing to obtain testimony from a Vocational Expert ("VE"). The Court disagrees with both.

### A. Evaluation of Evidence

Plaintiff argues that the ALJ failed to properly evaluate the relevant evidence. The Court disagrees.

Under the regulations promulgated by the Commissioner and the law of this Circuit, the opinion of a treating physician concerning the nature and severity of a plaintiff's impairments is entitled to controlling weight where the opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (discussing when controlling weight will be given to a treating physician's opinion). The regulations further provide that where the Commissioner declines to give controlling weight to the opinion of a treating physician, the ALJ must apply a number of factors to determine what weight he should give the treating physician's opinion, such as: (i) the nature and extent of the treatment relationship (with longer relationships and more involved treatment entitled to more weight); (ii) the extent to which the treating physician's opinion is supported by relevant evidence, particularly medical signs and laboratory findings, the consistency of the opinion; (iii) the specialty of the treating physician; and (iv) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)(ii)-(iv). In this Circuit, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). To be entitled to controlling weight, the treating physician's opinion must come from an acceptable medical source, which is defined to include a licensed physician or psychologist. 20 C.F.R. §§ 416.902, 416.913(a)(1)-(2). Nurses are not "acceptable medical sources" under the regulations for claims filed before March 27, 2017.

St. John v. Acting Comm'r of Soc. Sec., No. 15-8831, 2017 WL 712757, at *4 (D.N.J. Feb. 23, 2017).[1] Additionally, it is the ALJ's province as fact-finder to determine the relative weight of the evidence in the record when making his disability assessment. See 20 C.F.R. § 416.920b; Rohmer v. Comm'r of Soc. Sec., 131 F. App'x 896, 899 (3d Cir. 2005) ("The ALJ has the responsibility for evaluating the record and weighing the relative worth of evidence").

Plaintiff argues that the ALJ failed to give proper weight to the evidence regarding her obesity, pain, and mental impairments. Plaintiff's Memorandum of Law ("Pl. Mem.") at 14-21, ECF No. 20.

First, the ALJ did not ignore Plaintiff's obesity, but rather found it to be a severe impairment at step two and then determined that it did not meet or equal a listed impairment at step three. Tr. 13-14. SSR 02-1p provides that the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." 2002 WL 34686281, at *6 (Sept. 12, 2002) (emphasis added). Plaintiff's obesity was consistently documented across her medical records, but Plaintiff fails to point to evidence indicating that her obesity increased the severity of her impairments. See, e.g., Tr. 216, 218, 298, 312, 314, 432; see also Holley, 975 F. Supp. 2d at 482 (upholding ALJ decision where ALJ "acknowledged that obesity could cause exertional postural limitations . . . [but] Plaintiff d[id] not point to anything in the medical record which states any such limitations associated with her weight"). The ALJ appropriately accounted for Plaintiff's obesity when he determined that Plaintiff could perform sedentary work, which "involves lifting no more than 10 pounds at a time

---

[1] For claims filed after March 27, 2017, licensed advanced practice registered nurses and licensed physician assistants are considered acceptable medical sources for impairments within their licensed scope of practice. 20 C.F.R. § 416.902(a)(7)-(8).

and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and generally involves sitting. See 20 C.F.R. § 416.967(a); Tr. 16, 20.

Second, the ALJ appropriately considered Plaintiff's hearing testimony regarding her pain and mental impairments. "Although 'any statements of the individual concerning his or her symptoms must be carefully considered,' . . . the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). Here, the ALJ considered Plaintiff's statements and determined that they were not fully credible, based on both her Function Report and the medical evidence. Tr. 16-18. For example, the ALJ noted that Plaintiff "alleged mental impairments, but her psychiatric evaluations regularly indicated normal results, and she had no regular treatment for her psychiatric impairments." Tr. 18. Similarly, the ALJ cited to several medical records indicating that Plaintiff was able to perform activities of daily living. Tr. 16-18. Moreover, Plaintiff noted that she could prepare her own meals, travel alone via public transportation, and perform chores. Tr. 152-56, 181-85. Based on this, it is clear that the ALJ's determination that Plaintiff was not entirely credible was not purely speculative, but was instead supported by substantial evidence, including conflicting reports from Plaintiff herself.

Finally, the ALJ was similarly clear in describing the weight he assigned to various opinion evidence in the record, indicating how certain medical opinions were inconsistent with the objective test results or were otherwise internally inconsistent. E.g. Tr. 18-19 ("very little weight is given to Dr. Kahf because he is inconsistent in his own assessment. He opined that the claimant is completely disabled, and yet he noted that the claimant had no limitations in most areas of functioning [Tr. 203-208]. This is not only inconsistent within itself but also with the objective medical evidence"). He also explained why he credited certain opinions. E.g. Tr. 19 ("Great weight is given to Dr. Malkin. He opined that the claimant suffered injury in the accident and he

noted that she would be restricted in some activities of daily living. However, he did also opine that the claimant was not completely disabled and he did not say that the claimant could never return to work . . . This opinion is consistent with both the objective medical record . . . and the subjective testimony where the claimant reported to be able to [complete] many activities of daily living even though she could not perform all.")

In sum, the ALJ's evaluation of the evidence to determine that Plaintiff was not disabled was supported by substantial evidence.

### B. Adequacy of the RFC Determination

Plaintiff argues that the ALJ erred in determining her RFC because the ALJ's RFC assessment was conclusory. Pl. Mem. at 22. The Court disagrees.

In determining a plaintiff's RFC, the ALJ must consider "all of [Plaintiff's] medically determinable impairments of which [he is] aware, including [Plaintiff's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 416.945(a)(2). At this stage of the analysis, the ALJ must make "a complete assessment of the claimant's physical and mental functional limitations based on relevant medical and nonmedical evidence of a claimant's impairments. If the ALJ decides to reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review." Harris v. Comm'r of Soc. Sec., No. 11-2961, 2012 WL 4504486, at *7 (D.N.J. Sept. 27, 2012) (citation omitted). That said, the ALJ "need only include in the RFC those limitations which he finds to be credible." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).

Here, the ALJ considered Plaintiff's physical and mental impairments and explained why he found that she could still perform sedentary work. The ALJ began with a review of medical evidence dating back to a car accident in 2009, more than three years before Plaintiff's alleged

date of disability. Tr. 17. He detailed injuries to Plaintiff's spine, back, and knees. Tr. 17-18. He described the evidence of Dr. Nochimson, who determined that Plaintiff could perform sedentary work "with occasional limitations in reaching, and gross and fine manipulation." Tr. 18. The ALJ provided an overview of Plaintiff's mental abilities, noting that cognitively she was found to be functioning on a Borderline to Low Average level of intellectual ability, that she had no psychosis, and that she was alert, attentive, and oriented throughout the assessment. Tr. 18. The ALJ also noted Plaintiff's subjective complaints regarding pain and considered her obesity. As explained above, the ALJ provided clear reasoning as to why he credited or discredited each piece of medical opinion evidence. Tr. 18-20. On this basis, the Court cannot say that the ALJ's findings were conclusory. Instead, they meet the standard for substantial evidence, which does not require a preponderance. McCrea, 370 F.3d at 360. The ALJ's opinion contains sufficient evidence for a reasonable mind to "accept [it] as adequate." Ventura, 55 F.3d at 901.

Plaintiff next argues that the ALJ's RFC finding was in error because it failed to account for Plaintiff's use of a cane. The Court disagrees. SSR 96-9p provides that an ALJ need not address use of a cane in an RFC determination unless Plaintiff provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7. The ALJ acknowledged that Plaintiff had a cane at the hearing. Tr. 16, 35. There is no evidence in the record of a doctor prescribing the cane, and there is no documentation that she medically required one. In a similar situation the Third Circuit stated

> there are multiple references [in the record] to the fact that [claimant] uses a cane but no discussion of its medical necessity . . . "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed [.]"

11

Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2002) (quoting SSR 96-9p). Thus the ALJ did not err by failing to address Plaintiff's use of a cane in the RFC.

Plaintiff also argues that the ALJ's RFC finding was in error because it failed to consider her right shoulder impairment and inability to reach up. Pl. Mem. at 24. The record contained limited reference to Plaintiff's shoulder pain during the relevant period. The ALJ acknowledged that Dr. Nochimson stated that Plaintiff had "occasional limitations in reaching, and gross and fine manipulation." Tr. 18. However, that same report also opined that Plaintiff could perform sedentary work, and none of the doctor's treatment notes indicated that Plaintiff had problems with reaching or manipulation. Tr. 18-19; see also Tr. 50, 60 (noting that Plaintiff has no "manipulative limitations"). The ALJ need only include those limitations in the RFC that he finds to be credible. On this record, there was substantial evidence for the ALJ to conclude that Plaintiff's alleged shoulder impairment did not impact her RFC.

Finally, Plaintiff claims the ALJ erred by not obtaining Vocational Expert testimony due to nonexertional impairments. A claimant seeking SSI can have exertional and nonexertional limitations. 20 CFR § 416.969a. Exertional impairments "affect only [claimant's] ability to meet the demands of jobs," such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 416.969a(b). Nonextertional impairments are limitations that only affect the claimant's ability "to meet the demands of jobs other than the strength demands." 20 CFR § 416.969a(c)(1). Relevant examples of nonexertional impairments include "difficulty maintaining attention or concentrating . . . and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 CFR § 416.969a(c)(1)(ii), (vi). Where nonexertional impairments are severe and erode the occupational job base of the work, the "grids" laid out in the Medical-Vocational Guidelines, 20 C.F.R. Part

12

404, Subpart P, Appendix 2, cannot be relied on at step five of the disability analysis. See Sykes v. Apfel, 228 F.3d 259, 267 (3d Cir. 2000); Smelly v. Comm'r of Soc. Sec., No. 12-2691, 2013 WL 3223000 (D.N.J. June 24, 2013).

Here, the ALJ determined that if Plaintiff had the RFC to perform the full range of sedentary work, then a finding of "not disabled" would be directed under Medical-Vocational Rule 201.27. Tr. 20. In reviewing the medical evidence, the ALJ concluded that Plaintiff's limitations would not affect the occupational base of unskilled sedentary work. Tr. 20. SSR 96-9 provides that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." 1996 WL 374185 at *7. The ALJ found that, because Plaintiff only had postural limitations, and could still understand, remember, and carry out simple communicated instructions, she could perform the full range of sedentary work tasks. Even if the ALJ erred by failing to consider Plaintiff's use of a cane, that error was harmless, because a cane "does not automatically erode a claimant's sedentary occupational base significantly." Smelly, 2013 WL 3223000 at *7; see also SSR 96-9p. Because there is substantial evidence that Plaintiff's nonexertional limitations would not significantly erode the occupational base of unskilled sedentary work, the ALJ's use of the grids at step five was not in error and a Vocational Expert was not required.

## IV. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED.**

Date: October 9, 2019  /s/ Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**